**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **GREEN TREE SERVICING, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**ALEXANDRA A. BENTLEY a/k/a** )<br>**ALEXANDRA BENTLEY and the** )<br>**ASSOCIATION OF ST. C CONDOMINIUM** )<br>**OWNERS, INC.,** )<br>)<br>**Defendants.** )<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | **Civil Action No. 2013-0066** |

**Attorneys:**
**A.J. Stone, Esq.,**
**Johanna Harrington, Esq.,**
St. Thomas, U.S.V.I.
  *For Plaintiff*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default Judgment" filed by Plaintiff, Ditech Financial LLC f/k/a Green Tree Servicing, LLC ("Plaintiff") on February 5, 2016 against Defendants Alexandra A. Bentley a/k/a Alexandra Bentley ("Bentley") and Association of St. C Condominium Owners, Inc. ("St. C"). (Dkt. No. 44). For the reasons discussed below, the Court will grant Plaintiff's Motion for Default Judgment.

### I. BACKGROUND

In June 2013, Flagstar Bank, FSB[1] filed a Complaint against Bentley, alleging causes of action for debt and foreclosure of real property mortgage. (Dkt. No. 1). Bentley executed a Waiver

---

[1] On December 4, 2015, the Court granted Flagstar Bank's motion to substitute Green Tree Servicing, LLC, the successor-in-interest to Flagstar, as Plaintiff. (Dkt. No. 27). Green Tree subsequently merged with Ditech Financial LLC (Dkt. No. 44, ¶ 13).

of Service on August 1, 2013. (Dkt. No. 5). In September 2013, Plaintiff filed its First Amended Complaint, which, *inter alia*, added the Association of St. C Condominium Owners as a Defendant. (Dkt. No. 8). In its Amended Complaint, Plaintiff asserted that Bentley was the titleholder of record to real property ("the Property"), described in the Condominium Deed as:

> Condominium Unit No. B-110 St. "C" Condominium located upon Plot No. 2 (3.19 U.S. Acres) and 6-G (2.76 U.S. Acres) Estate St. John as shown on P.W.D. Drawing No. 2647 dated August 22, 1969, according to the Declaration of Condominium dated December 5, 1969, filed for recording December 5, 1969 at the Office of the Recorder of Deeds, as amended; together with a 1/132 (.7575%) undivided interest in the common areas and facilities declared in said Declaration of Condominium to be an appurtenance to the above described condominium unit.

(Dkt. No. 44-2). The Amended Complaint alleges that, on August 1, 2008, Bentley executed and delivered to Gold Star Mortgage Corp. ("Gold Star") a promissory note (the "Note"), obligating herself to pay the principal amount of $96,000.00, together with interest at a rate of 6.500% per annum, in consecutive monthly installments of $606.79 beginning September 1, 2008. (Dkt. No. 8, ¶¶ 7-8). To secure payment of the Note, Bentley granted to Gold Star and Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Gold Star and its successors and assigns, a first priority mortgage dated August 1, 2008 over the Property (the "Mortgage"), which provided that Bentley would pay the payments due under the Note. *Id.* ¶¶ 10-11.

The Amended Complaint goes on to say that, on or about March 14, 2013, St. C recorded a Notice of Lien in the amount of $3,197.00 against the Property, and that that lien is subordinate to the Mortgage. *Id.* ¶ 12. On January 1, 2013, Bentley defaulted under the terms and conditions of the Note in that monthly installments of principal and interest became due and were not paid, and she also defaulted under the terms and conditions of the Mortgage because principal, interest, and other charges became due and were not paid. *Id.* ¶¶ 13, 14. Plaintiff gave notice of default to Bentley on February 15, 2013, advising her that failure to cure the default would result in acceleration of the debt and foreclosure of the mortgage; however, the default had not been cured

as of the date that the Amended Complaint was filed. *Id.* ¶¶ 15, 16. Plaintiff elected to accelerate the loan, such that the entire principal sum with unpaid accrued interest would become immediately due and payable. *Id.*, ¶18. On April 23, 2013, MERS, for itself and as nominee for Gold Star, assigned its entire interest in the Property to Plaintiff. *Id.* ¶ 19.

With regard to the debt cause of action, the Amended Complaint alleges that, as of April 3, 2013, Bentley owed Plaintiff the unpaid principal balance in the amount of $90,803.36, plus accrued interest, advances, expenses, fees, costs and late charges; that Plaintiff is entitled to collect all sums due under the Note from Bentley and is entitled to be reimbursed for any insurance premiums, taxes, or other charges it may pay with respect to the Property under the terms of the Mortgage; and that under the terms of the Note and Mortgage, Plaintiff is entitled to be reimbursed for reasonable attorney's fees and other expenses it has incurred to enforce payment on the Note or incidental to foreclosure on the Property. *Id.* ¶¶ 22-25. With regard to the foreclosure cause of action, the Amended Complaint provides that Plaintiff has actual possession of and ownership rights to the Note and Mortgage, entitling it to maintain the foreclosure action; that Bentley is in default under the terms and conditions of the Mortgage for failure to make timely payment of principal when due; and that Plaintiff is entitled to foreclosure of its lien on the Property, the sale of the Property to satisfy the Note, and the recovery of any deficiency from Bentley. *Id.*, ¶¶ 28-30.

Edward Jacobs, Esq., St. C's attorney and resident agent, was served with copies of the Summons and Complaint on October 18, 2013. (Dkt. No. 13). St. C has neither answered the Complaint nor appeared in this action. On November 19, 2013, Plaintiff filed an Application for Entry of Default against St. C. (Dkt. Nos. 14, 15). The Clerk of Court entered default against St. C on December 18, 2013. (Dkt. No. 21).

The Court denied a Motion to Approve Consent Judgment between Plaintiff and Bentley (Dkt. No. 19)[2]; denied Plaintiff's first Application for Entry of Default against Bentley (Dkt. No. 36)[3]; and then permitted service by publication, as Bentley could not be personally located (Dkt. Nos. 38, 40, 41). The Clerk of Court granted Plaintiff's Second Application for Entry of Default against Bentley on October 14, 2015. (Dkt. No. 43).

On February 5, 2016, Plaintiff filed its Motion for Default Judgment (Dkt. No. 44), which contains, *inter alia,* a Memorandum of Law, an Affidavit of Indebtedness (Dkt. No. 44-8), and a Declaration of Counsel. (Dkt. No. 44-13).

In its Memorandum, Plaintiff states that the procedural elements for default judgment against Bentley have been met. (Dkt. No. 44) In the Declaration of Johanna Harrington, Plaintiff's Counsel, Plaintiff provides the factual basis for its argument, stating that: Bentley was provided notice of the First Amended Complaint by publication of the summons in two different newspapers of general circulation; she failed to answer or otherwise respond within the time period provided; and the Clerk of Court entered default against her for failing to answer, plead or otherwise defend the matter. (Dkt. No. 44-13). Counsel also avers that Bentley is not an infant or an incompetent person; and that, as reflected in the Status Report from the Department of Defense Manpower Data Center, is not an active duty member of the military service. *Id.*

---

[2] The Court denied a proposed Consent Judgment without prejudice due to concerns it had with the language contained therein, which departed from language the Court had deemed appropriate for Judgments and Orders filed in debt and foreclosure proceedings. (Dkt. No. 19).

[3] The Magistrate Judge of this Court denied Plaintiff's first Application for Entry of Default, finding that the record was devoid of any evidence that the First Amended Complaint was served on Bentley. (Dkt. No. 36).

Similarly, Plaintiff argues that default judgment should be entered against St. C, as it was properly served, it failed to answer or otherwise respond, and the Clerk of Court entered default against it for failing to plead or otherwise defend the matter. (Dkt. No. 44 at 11).

Plaintiff further contends that the pleadings in this action provide a sufficient basis for entry of default judgment on the merits of its claims, as the documentation shows that: title to the Property is held by Bentley, who executed the Note and the accompanying Mortgage; Plaintiff is a holder of the Note and Mortgage and is entitled to enforce those instruments; Bentley has defaulted under the terms of both the Note and the Mortgage and failed to cure the default; and Plaintiff elected to accelerate the amounts due and owing upon default, and foreclose on the Property. *Id.* at 7-8. In addition, Plaintiff argues that its mortgage lien is superior to St. C's lien as a matter of law because its Mortgage was recorded first and that, as a race notice jurisdiction, the party with an earlier recorded lien in the Virgin Islands has priority. *Id.* at 9. Finally, Plaintiff asserts that it has demonstrated its entitlement to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). *Id.*

In support of its Motion, Plaintiff filed an Affidavit of Indebtedness, signed by Tina Maric, an Assistant Vice President of Ditech, who explained that Ditech's document management system keeps track, and maintains business records, of transactions related to the Mortgage and Note as part of its regularly conducted business activity. (Dkt. No. 44-8, ¶¶ 2-3). The Declaration sets forth the amounts due and owing through January 21, 2016: $90,803.36 in unpaid principal balance; interest from December 1, 2012 through January 21, 2016 of $18,522.42; late charges of $273.06; property inspections of $49.00; forced place insurance of $1,088.50; and an escrow credit of $140.49; for a total amount due of $110,595.85. *Id.* ¶ 8. Ms. Maric asserts that interest accrues at the per diem rate of $16.18. *Id.* She also states that Ditech has retained the law firm of Quintairos,

Prieto, Wood & Boyer, P.A. to prosecute the foreclosure action, and that the firm would submit its request for fees and costs in this matter. *Id.* ¶ 9.

## II. APPLICABLE LEGAL PRINCIPLES

In a motion for default judgment, "'the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment.'" *Star Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Catanzaro v. Fischer,* 570 F. App'x 162, 165 (3d Cir. 2014); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951). In the context of a grant of default judgment pursuant to Federal Rule of Civil Procedure 55, "'[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Star Pacific Corp.,* 574 F. App'x at 231 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A motion for default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemembers] Civil Relief Act.

*Bank of Nova Scotia v. Abdallah,* 2013 WL 5312399, at *5 (D.V.I. Sept. 23, 2013) (quoting *Idewu v. Sealey*, 2012 U.S. Dist. LEXIS 36783, at *6 (D.V.I. Mar. 19, 2012)); *see also* Fed. R. Civ. P. 55(b); *Island Yacht Charters, Inc. v. Malgaglio,* 2009 WL 1507406, at *1 (D.V.I. May 28, 2009).

Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

### III.   ANALYSIS

Plaintiff has satisfied all of the requirements necessary to obtain a default judgment against Bentley. It has shown that Bentley was properly served by publication (Dkt. Nos. 40, 41); she has not appeared; and default was entered against her by the Clerk of Court (Dkt. No. 43). Further, in the Declaration of Counsel, Plaintiff's Attorney, Johanna Harrington, Esq., averred that, based on her date of birth, Bentley is an adult over the age of eighteen, and that she is competent because "she communicated with prior counsel regarding executing a Consent Judgment in order to limit the amount of the damages sought by Plaintiff." (Dkt. No. 44-13, ¶¶ 10-11); *see FirstBank Puerto Rico v. Jaymo Properties, LLC*, 379 F. App'x 166, 170 (3d Cir. 2010) (holding that bank counsel's affidavit stating in good faith that defendant is a competent adult is sufficient to find that a non-appearing defendant is not a minor or incompetent person for the purposes of obtaining a default judgment).

In addition, Plaintiff provided a copy of a Military Status Report from the Department of Defense Manpower Data Center showing that Bentley is not on active duty in the military service as defined in the Servicemembers Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. No. 44-12). Plaintiff has also shown with specificity how it calculated the amount of the judgment. (Dkt. No. 44-8 and attachments).

Similarly, Plaintiff has satisfied the requirements necessary to obtain a default judgment against St. C by showing that: (1) default was entered against St. C by the Clerk of Court (Dkt.

No. 21); (2) St. C has not appeared; and (3) St. C was validly served with process. (Dkt. No. 13). In addition, Plaintiff has shown that its lien is superior to St. C's lien because Plaintiff's lien was recorded first. *See Brodhurst v. Frazier*, 2012 WL 8123137, at *4 (V.I. Sept. 12, 2012) (stating that Virgin Islands courts have consistently interpreted the statute governing recording of liens as a race-notice statute); Plaintiff's Lien, Dkt. No. 44-4; St. C's Lien, Dkt. No. 44-10.

The Court has also considered the *Chamberlain* factors and finds that the prejudice to Plaintiff resulting from Bentley's breach of her contractual obligations, and the apparent absence of a litigable defense for either Bentley or St. C, weigh in favor of the Court granting default judgment. In addition, Bentley's and St. C's default was a result of their culpable conduct as evidenced by their failure to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint). Accordingly, default judgment is appropriate.

## IV. CONCLUSION

Plaintiff has satisfied the requirements necessary for a default judgment against Defendants Alexandra A. Bentley a/k/a Alexandra Bentley and the Association of St. C Condominium Owners, Inc. Accordingly, Plaintiff's Motion for Default Judgment (Dkt. No. 44) on the debt and foreclosure causes of action in the Amended Complaint will be granted.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: April 22, 2016 _____/s/_____
WILMA A. LEWIS
Chief Judge